# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| WELLS FARGO BANK, N.A., a national banking association, | |
| Plaintiff, | Case No.: 2:15-cv-00800-GMN-CWH |
| vs. | **ORDER** |
| SFR INVESTMENTS POOL 1, LLC, a Nevada limited-liability company; FIESTA DEL NORTE HOMEOWNERS ASSOCIATION, a Nevada non-profit corporation; ALESSI & KOENIG, LLC, a Nevada limited-liability company, | |
| Defendants. | |
| SFR INVESTMENTS POOL 1, LLC, a Nevada limited-liability company, | |
| Counter-Claimant, | |
| vs. | |
| WELLS FARGO BANK, N.A., a national banking association; EDGAR I. TREYES, an individua, | |
| Counter/Cross Defendant. | |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 70), filed by Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"). Defendant SFR Investments Pool 1, LLC ("SFR") filed a Response, (ECF No. 77), to which Wells Fargo filed a Reply, (ECF No. 80).

Also pending before the Court is SFR's Motion for Summary Judgment, (ECF No. 73). Wells Fargo filed a Response, (ECF No. 76), and SFR filed a Reply, (ECF No. 78). For the

reasons discussed herein, Wells Fargo's Motion for Summary Judgment is **DENIED**, and SFR's Motion for Summary Judgment is **GRANTED**.

Also pending before the Court is the Motion to Withdraw as Attorney, (ECF No. 82), filed by Steven Loizzi attorney for Alessi & Koenig LLC.

I. <u>**BACKGROUND**</u>

Wells Fargo filed its Complaint on April 29, 2015, asserting claims involving the non-judicial foreclosure on real property located at 3616 Cantura Crest Court, North Las Vegas, Nevada 89031 (the "Property"). (Compl. ¶ 1, ECF No. 1). On December 29, 2004, Edgar I. Treyes ("Treyes") purchased the Property by way of a loan in the amount of $208,440.00 secured by a Deed of Trust ("DOT") recorded February 17, 2005. (*See* DOT, Ex. 2B to Wells Fargo's Mot. Summ. J. ("MSJ"), ECF No. 70-4).[1] The senior deed of trust was assigned to Wells Fargo via an assignment of deed of trust recorded against the Property on March 25, 2014. (*See* Assignment of DOT, Ex. 5 to Wells Fargo's MSJ, ECF No. 70-7).

Fiesta Del Norte Homeowners Association ("HOA"), through its agent Alessi & Koenig, LLC ("Alessi"), recorded a notice of delinquent assessment lien on September 20, 2012, and a notice of default and election to sell to satisfy the delinquent assessment lien on November 28, 2012. (*See* Notice of Delinquent Assessment Lien, Ex. 7 to Wells Fargo's MSJ, ECF No. 70-9); (*see also* Notice of Default and Election to Sell Under Homeowners Association Lien, Ex. 8 to Wells Fargo's MSJ, ECF No. 70-10). The notice states that the amount due to HOA was $1,1838.39, but it did not specify whether that amount includes dues, interest, fees and collection costs in addition to assessments. (Notice of Default and Election to Sell Under Homeowners Association Lien, Ex. 8 to Wells Fargo's MSJ). On May 21, 2013, HOA recorded a notice of trustee's sale. (*See* Notice of Trustee's Sale, Ex. 9 to Wells Fargo's MSJ,

---

[1] The Court takes judicial notice of the matters of public record attached as exhibits in the respective parties' motions. *See Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

ECF No. 70-11). On September 25, 2013, SFR purchased the Property at the foreclosure sale pursuant to Nevada Revised Statute ("NRS") § 116.1113. (*See* Trustee's Deed upon Sale, Ex. 10 to Wells Fargo's MSJ, ECF No. 70-12).

Wells Fargo asserts the following causes of action in its Complaint against various parties involved in the foreclosure and subsequent sales of the Property: (1) declaratory relief under the Takings Clause against all Defendants; (2) declaratory relief under the Due Process Clause against all Defendants; (3) wrongful foreclosure against all Defendants; (4) Violation of Nevada Revised Statute ("NRS") § 116.1113 against HOA and Alessi; (5) intentional interference with contract against all Defendants; and (6) quiet title against all defendants. (Compl. ¶¶ 45–93).

On June 9, 2015, SFR filed counterclaims against Wells Fargo and crossclaims against Treyes for: (1) quiet title with the request of declaratory relief; and (2) preliminary and permanent injunction. (SFR's Answer at 12–14, ECF No. 14).[2]

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th

---

[2] On April 11, 2016, the Clerk of Court filed an entry of default as to Treyes. (*See* Clerk's Entry of Default, ECF No. 42).

Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual

data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

### III. DISCUSSION

Wells Fargo argues that summary judgment is warranted because (1) the Ninth Circuit's decision in *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017),[3] compels a finding that its DOT survived the sale; (2) the content of the HOA's foreclosure notices do not meet due process standards; and (3) NRS § 116.3116 violates the Takings Clause. (Wells Fargo's MSJ 2:1–9, ECF No. 70). SFR argues that *Bourne Valley* has been superseded by state law, that the foreclosure sale does not constitute a taking, and that it is entitled to summary judgment on its claim for quiet title because the first deed of trust was extinguished by the HOA's foreclosure sale. (SFR's MSJ 8:23, 16:16, 18:10–12, ECF No. 73). The Court first turns to the parties' arguments concerning the applicability of *Bourne Valley* to the instant case.

---

[3] In light of the Nevada Supreme Court's ruling in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018) (en banc), the Court ordered supplemental briefing on "whether a statute that has been found to be facially invalid can be cured by subsequent interpretation by a state supreme court." (Order, ECF No. 83). Wells Fargo and SFR timely filed their respective supplemental briefs, (ECF Nos. 84, 85).

## A. Claims Related to Quiet Title and Due Process

### 1. *Constitutionality of the Foreclosure*

In *Bourne Valley*, the Ninth Circuit held that NRS § 116.3116's "'opt-in' notice scheme, which required a homeowners' association to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated the lender's constitutional due process rights under the Fourteenth Amendment to the Federal Constitution." *Bourne Valley*, 832 F.3d at 1156. Specifically, the Court of Appeals found that by enacting the statute, the Nevada legislature acted to adversely affect the property interests of mortgage lenders and was thus required to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 1159. The statute's opt-in notice provisions therefore violated the Fourteenth Amendment's Due Process Clause because they impermissibly "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Id.*

In holding that NRS § 116.3116's opt-in notice scheme is facially unconstitutional, the Ninth Circuit rejected the appellant's argument that NRS § 107.090 should be read into NRS § 116.31168(1) to cure the constitutional deficiency. *Id.* Specifically, the appellant argued that the "incorporation of section 107.090 means that foreclosing homeowners' associations were required to provide notice to mortgage lenders even absent a request." *Id.* The Ninth Circuit, interpreting Nevada law, held that this interpretation "would impermissibly render the express notice provisions of Chapter 116 entirely superfluous." *Id.*

Subsequent to *Bourne Valley*, a court in this District certified the following question to the Nevada Supreme Court: "Whether NRS § 116.31168(1)'s incorporation of NRS § 107.090 required a homeowner's association to provide notices of default and/or sale to persons or entities holding a subordinate interest even when such persons or entities did not

request notice, prior to the amendment that took effect on October 1, 2015." *Bank of New York Mellon v. Star Hill Homeowners Ass'n*, No. 2:16-cv-02561-RFB-PAL, 2017 WL 1439671, at *5 (D. Nev. Apr. 21, 2017). On August 2, 2018, the Nevada Supreme Court issued its decision on the certified question in *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, 422 P.3d 1248 (Nev. 2018). The Nevada Supreme Court explicitly "decline[d] to follow the majority holding in *Bourne Valley*, 832 F.3d at 1159," and concluded that "NRS 116.31168 fully incorporated both the opt-in and mandatory notice provisions of NRS 107.090 . . . ." *Id.* at 1253. Therefore, "before the October 1, 2015, amendment to NRS 116.31168, the statute incorporated NRS 107.090's requirement to provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." *Id.*

"[A] State's highest court is the final judicial arbiter of the meaning of state statutes." *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982) ("State courts have the final authority to interpret and, where they see fit, to reinterpret that state's legislation."). Federal courts are bound by its respective circuit courts' interpretations of state law only "in the absence of any subsequent indication from the [state] courts that [the federal] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983); *see also Togill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017) (holding that the Fourth Circuit was bound by the Supreme Court of Virginia's limiting construction of a statute that was previously found to be facially unconstitutional by a federal court). Such rulings may only be reexamined when the "reasoning or theory" of that authority is "clearly irreconcilable" with the reasoning or theory of intervening higher authority. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quoting *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc)). In determining whether intervening higher authority is "clearly irreconcilable," courts must "look at more than the surface conclusions of the competing authority." *Id.* "Rather, the relevant court of last resort must have undercut the

theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Id.* (quoting *Gammie*, 335 F.3d at 900).

Here, the Nevada Supreme Court's interpretation of NRS § 116.31168's notice provisions is irreconcilable with the Ninth Circuit's prior interpretation. The Ninth Circuit's conclusion that NRS § 116.3116 violated a lenders' due process rights was explicitly premised upon the Ninth Circuit's interpretation of state law. Specifically, the Ninth Circuit concluded the notice provisions of NRS § 107.090 are not incorporated into NRS § 116.31168. However, because the Nevada Supreme Court has since rejected the Ninth Circuit's interpretation by holding that the notice provisions of NRS § 107.090 are incorporated into NRS § 116.31168, *Bourne Valley* is no longer controlling authority with respect to NRS § 116.3116's notice provisions.

Accordingly, to the extent Wells Fargo seeks to quiet title based upon the Ninth Circuit's holding in *Bourne Valley*, it necessarily fails. The Court thus turns to Wells Fargo's remaining arguments in support of its Motion.

### 2. Content of Notices

With respect to HOA's failure to specify the super-priority portion of the lien in the foreclosure notice, this does not render the notices provided unconstitutional. Due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see Bourne Valley*, 832 F.3d at 1158. To establish a procedural due process claim, a claimant must show "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

Here, Wells Fargo claims that "nothing in the Notices was designed to put it on notice that the Deed of Trust could be extinguished." (Wells Fargo's MSJ 11:27–28). The Court disagrees. Given that Wells Fargo acknowledges having received the HOA notices of default and notice of sale, Wells Fargo was on notice that its interest was subject to pendency of action and was provided the required information under NRS § 116.3116. (*See* Wells Fargo's MSJ 11:27–28); (*see also* SFR's MSJ 14:10, 20:22–21:5). As another court in this District recognized, "[t]he fact that a notice does not identify a superpriority amount is of no consequence because Chapter 116 gives lienholders notice that the HOA may have a superpriority interest that could extinguish their security interests." *Bank of Am., N.A. v. Saticoy Bay LLC Series*, No. 2:17-cv-02808-APG-CWH, 2018 WL 3312969, at *3 (D. Nev. July 5, 2018). The Nevada Supreme Court has also rejected the argument that foreclosure notices must always state the super-priority portion, reasoning, in part, that "[t]he notices went to the homeowner and other junior lienholders, not just [the first deed of trust holder], so it was appropriate to state the total amount of the lien." *SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 418 (Nev. 2014) (en banc). Therefore, the Court finds that adequate notice was given to the interested parties prior to extinguishing a property right. Additionally, for these reasons, Wells Fargo's argument regarding the equity of the foreclosure sale based on the inadequate sales price and the alleged inadequate notice content also fails. (*See* Wells Fargo's Resp. 11:19–21, ECF No. 76).

### 3. Bona Fide Purchaser

Because Wells Fargo has failed to raise any genuine issue of material fact with respect to its due process and equitable challenges to the foreclosure sale, the Court need not address whether SFR was a bona fide purchaser for value. *See Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *3 n.4 (Nev. Ct. App. Apr. 17, 2017); *Bank of*

*Am., N.A. v. BTK Props., LLC*, No. 2:16-cv-1558-JCM-PAL, 2018 WL 1073133, at *9 (D. Nev. Feb. 27, 2018).

In light of the foregoing, the Court finds that Wells Fargo has failed to raise a genuine dispute of material fact as to its claims for quiet title. Further, as SFR has met its burden of demonstrating that there is no genuine dispute of material fact as to its quiet title claim, it is entitled to judgment on that issue. Based on the Court's findings as to the merits of Wells Fargo's interest in the Property, Wells Fargo cannot establish the requisite elements of its claims alleging a violation of NRS § 116.1113, declaratory relief under the Due Process Clause, and wrongful foreclosure. Accordingly, the Court grants SFR's request for summary judgment on its claim for quiet title.

Additionally, SFR's second counter/crossclaim for preliminary and permanent injunction will be dismissed as the Court follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of action. (*See* SFR's Answer at 13–14). *See, e.g., In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2-12-cv-346-JCM-RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action").

**B.  Takings Claim**

Wells Fargo argues that NRS § 116.3116 violates the Fifth Amendment's Takings Clause. (Wells Fargo's MSJ 12:4–5). The Takings Clauses of the United States prohibits the state from taking private property for public use without just compensation. U.S. Const. amend. V. The Nevada Supreme Court has held "that the extinguishment of a subordinate deed of trust through an HOA's nonjudicial foreclosure does not constitute a governmental taking." *Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg., a Div. of Wells Fargo Bank, N.A.*, 388 P.3d 970, 975 (Nev. 2017); *see Wells Fargo Bank N.A. v. Mahogany Meadows Ave.*

*Tr.*, No. 2-17-cv-1469-JCM-VCF, 2018 WL 1368270, at *2 (D. Nev. Mar. 16, 2018); *see also Guild Mortg. Co. v. Prestwick Court Tr.*, No. 2-15-cv-258-JCM-VCF, 2017 WL 714343, at *7 (D. Nev. Feb. 22, 2017). Accordingly, SFR is entitled to judgment as a matter of law on Wells Fargo's first cause of action.

### C. Intentional Interference with Contract Claim

Wells Fargo's fifth cause of action alleges intentional interference with contract. To prove a claim for intentional interference of contract, a party must establish: (1) the existence of "a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *J.J. Industries, LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).

Here, the Court has found that the Property was properly foreclosed under the DOT. Therefore, foreclosure-related activities cannot have constituted improper interference or intentional actions designed to disrupt Wells Fargo's contractual relations. Thus, the Court is inclined to grant summary judgment in favor of SFR as to this claim as a matter of law. *See Wells Fargo Bank N.A. v. Sfr Investments Pool 1, LLC*, No. 2-13-cv-01231-RCJ-GWF, 2016 WL 5955522, at *3 (D. Nev. Oct. 13, 2016).

///

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Wells Fargo's Motion for Summary Judgment, (ECF No. 70), is **DENIED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 73), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Withdraw as Attorney, (ECF No. 82), is **GRANTED** for good cause.

The Clerk of Court is ordered to close the case.

**DATED** this __28__ day of September, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Court